IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| MELALEUCA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 07-212-E-EJL-MHW |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| DARYL HANSEN, and | ) | |
| SVETLANA BELOVA, | ) | |
| | ) | |
| Defendants. | ) | |

On September 18, 2007, Plaintiff Melaleuca, Inc. ("Plaintiff") filed its Second Amended

Verified Complaint and Demand for Jury Trial ("Complaint")[1].   The Complaint contains four

causes of action.  Count One alleges that Defendants Daryl Hansen ("Hansen") and Svetlana

Belova ("Belova"), violated the Controlling the Assault of Non-Solicited Pornography and

Marketing Act of 2003 ("Can-Spam Act"), 15 U.S.C. § 7701, *et. seq*.  Count Two alleges that

Defendants Hansen and Belova violated the Idaho Consumer Protection Act ("ICPA") under

Idaho Code § 48-603E.  Defendant Hansen is the only defendant named in the remaining two

causes of action.  Count Three alleges that Hansen violated the Idaho Trade Secrets Act under

Idaho Code § 48-801(2)(b)(B).  Finally, Count Four alleges that Hansen tortiously interfered

---

[1]  Plaintiff amended its initial Complaint twice before Defendants's first response.

**Report and Recommendation - Page 1**

with Plaintiff's contracts in violation of Idaho law.  *See* Complaint, Docket No. 9.

On November 13, 2007, Defendants, appearing pro se, filed a motion to dismiss Plaintiff's action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).   Defendants next argue that Plaintiff's action should be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3), or in the alternative (presumably), transfer venue under 28 U.S.C. § 1406 and 18 U.S.C. § 1391(b).  Defendants also argue that the Plaintiff should be required to post a bond under § 7706(g)(4) of the Can-Spam Act.

Defendants also made a merits based claim against Count Two of the Complaint, which alleged a violation of the Idaho Consumer Protection Act.  Defendants argue that this cause of action fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), since the federal Can-Spam Act preempts the provision of the Idaho Consumer Protection Act alleged in the Complaint.  *See* Defs.' Mot. Dismiss, Docket No. 14.

Oral argument was heard on this motion on May 1, 2008 in Pocatello, Idaho.  By the time of oral argument, Idaho counsel had appeared on behalf of both Defendants.  At oral arguments, the parties focused their arguments on the personal jurisdiction issue.  Likewise, the Court will focus its attention on the same issue.

First the Court takes note of Defendants' motion to dismiss Count Two of the Complaint based on arguments of federal preemption.  This matter was initially raised by Defendants when they were proceeding pro se, received only a brief response from Plaintiff and was not addressed at oral argument.  This argument involves a complex legal issue in a new area of law that would be better addressed at a later time, with further briefing from the parties and a more developed record.  It is noted that this issue was raised on a Rule 12(b)(6) motion where matters outside the

**Report and Recommendation - Page 2**

pleadings cannot be considered.  Courts that have analyzed the Can-Spam  preemption clause have done so under Rule 56 and have sometimes looked outside the complaint to the actual e-mails at issue.  *See, e.g., Gordon v. Virtumundo*, 2007 WL 1459395 (W.D. Wash. 2007); *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006).  The Court will leave this issue for another time.

**I.**
**REPORT**

**A.     Background**[2]

Defendant Hansen resides in California and at the time of these alleged events, worked as an independent marketing executive for a multi-level marketing company called ITV.[3]  As an independent marketing executive, he would answer phone calls made by customers to a 1-800 number after viewing infomercials that featured products sold by ITV.  In addition, Hansen would try to get these individuals to join ITV, doing the type of work he did.  Melaleuca, an Idaho corporation, is engaged in a similar type of business.  In addition to selling health and wellness products, Melaleuca encourages its customers to become marketing executives by referring family and friends to Melaleuca to purchase its products and allowing them to earn commission on any orders made by the referred individuals.  Additionally, Melaleuca operates as an internet service provider as owner of the domain name iglide.net.  Through iglide.net, Melaleuca gives their marketing executives the option of purchasing internet services, including e-mail.

After Hansen began working at ITV, he contacted individuals via e-mail, some of whom

---

[2]  The majority of this information was presented at oral argument.

[3]  It is unclear from the record whether Hansen still works for ITV.

worked at Melaleuca, and inquired whether they would be interested in hearing about a new business opportunity in the television business with an established media company involved with infomercials.  The e-mails gave a brief description of how ITV works, exulted the benefits of working for ITV and asked the individuals to call him.  It was represented at oral argument that Hansen was aware that several of these individuals worked at Melaleuca and was familiar with Melaleuca through relatives and other contacts in the industry.  Some of the Melaleuca marketing executives he contacted were users of the iglide.net server owned by Melaleuca.

**B.      Personal Jurisdiction/Venue**

Defendants argue that they have not availed themselves of the privileges or benefits of Idaho law as required for this Court to have jurisdiction over them.  Defs.' Mot. Dismiss, at 3, Docket No. 14.  They seem to base this argument on their claims that: (1) they are residents of California; (2) they do not engage in advertising or have customers located in Idaho; (3) their only business addresses are in California; (4) they do not own, use, or possess any real estate or other property in Idaho; (5) they do not have any offices or other places of business in Idaho; (6) they have no Idaho investments or accounts with Idaho banks; (7) they are not licensed or regulated by an Idaho government agency; (8) they have no mailing addresses, post office boxes, or directory listings in Idaho; and (9) they have never submitted to jurisdiction in any action in an Idaho state or federal court.  Hansen Aff., Docket No. 14-2; Belova Aff., Docket No. 14-3. They also assert that they have "never been involved in sending unsolicited e-mail messages that contain advertising for a product or service."  Belova Aff. ¶ 8, Docket No. 17-2; Hansen Aff. ¶ 8, Docket No. 17-3.

Plaintiff argues that this Court has specific jurisdiction over Defendants because: (1)

Defendant Hansen was subjectively aware of Plaintiff's location in Idaho when he sent targeted e-mails to Plaintiff's executives; and (2) the list that Defendants used to contact Plaintiff's executives showed that more than 100 of those executives resided in Idaho.  *See* Pl.'s Mem. Opp'n, at 9, Docket No. 16 (citing Chandler Aff. ¶¶ 9-11, Docket No 16-2).  It also argues that but for Defendants sending e-mails through its servers and to its independent marketing executives, Plaintiff's damages and injuries under Can-Spam would not have arisen.  Pl.'s Mem. Opp'n, at 10, Docket No. 16.  Finally, it contends that Defendants have not attempted to argue that this Court's personal jurisdiction over them would be unreasonable.  Pl.'s Mem. Opp'n, at 11, Docket No. 16.

### 1.      Standard of Review

 In a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proof of demonstrating that jurisdiction is appropriate.  *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). The plaintiff "need only make a prima facie showing of jurisdictional facts."  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  The Court must take the plaintiff's uncontroverted allegations as true and conflicts between the parties over statements in affidavits are resolved in plaintiff's favor.  *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

Where, as here, there is no federal statute governing personal jurisdiction, the law of the state in which the district court sits applies.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Under Idaho law, a court may exercise jurisdiction over an out-of-state defendant where: (1) the act giving rise to the cause of action falls within Idaho's long-arm statute, and (2) the constitutional standards of due process must be met.  *Smalley v. Kaiser*,

950 P.2d 1248, 1251 (Idaho 1997).  Because Idaho's long-arm statute permits courts to assert

personal jurisdiction to the same extent permitted by the due process clause of the Constitution,

courts are only required to decide whether asserting personal jurisdiction complies with due

process under Idaho law.  *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987).

Federal due process requires that a nonresident defendant have minimum contacts with

the forum state of such a nature that the exercise of personal jurisdiction does not offend

traditional notions of fair play and substantial justice.  *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945).  This constitutional test may be satisfied by showing that (1) the defendant has

"substantial" or "continuous and systematic" contacts with the forum state, or (2) there is a

strong relationship between the defendant's forum contacts and the cause of action.  *Decker Coal*

*Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986).  The former is known as

"general" jurisdiction and the latter as "specific" jurisdiction.  *See Ziegler v. Indian River*

*County*, 64 F.3d 470, 473 (9th Cir. 1995).  Because Plaintiff does not seek to invoke general

jurisdiction in this case, the remaining discussion will focus on specific jurisdiction.

### 2.      Specific Jurisdiction

The Ninth Circuit established the following three-factor test to determine whether a court

has specific jurisdiction over a nonresident defendant: "(1) the nonresident defendant must do

some act or consummate some transaction with the forum state or perform some act by which it

*purposefully avails* itself of the privilege of conducting activities in the forum state, thereby

invoking the benefits and protection of its laws; (2) the claim must *arise out of* or result forum

the defendant's forum-related activity; and/or (3) the exercise of jurisdiction must be

*reasonable*." *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1188-89 (9th Cir. 2002)

**Report and Recommendation - Page 6**

(emphasis added) (citing *Brand v. Menelove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986)).

Generally, specific jurisdiction cannot be established unless the plaintiff meets its burden of satisfying the first two requirements. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff satisfies the first two requirements, the burden shifts to the defendant to show that the court's exercise would not be reasonable. *Id*. The Ninth Circuit taken a flexible approach in determining specific jurisdiction by holding that it "can be established with a lesser showing of minimum contacts where considerations of reasonableness dictate." *Ochoa*, 287 F.3d at 1189 n.2 (citing *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986)).

### a.     Purposeful Availment Requirement

Although courts generally use the phrase "purposeful availment" to include both purposeful availment and direction, the Ninth Circuit recognizes availment and direction as two distinct concepts. *Schwarzenegger*, 374 F.3d at 802. A purposeful availment analysis is most often used in contractual suits, whereas a purposeful direction analysis is generally applied in tort cases. *Id*. In this case, Plaintiff attempts to establish this requirement by showing purposeful direction, rather than purposeful availment. *See* Pl.'s Mem. Opp'n, Docket No. 16.

A showing of purposeful direction requires evidence that the defendant's actions outside the forum were directed at the forum. *Schwarzenegger*, 374 F.3d at 803. The Ninth Circuit evaluates purposeful direction under the Supreme Court's three-part *Calder* test which "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*. (citing *Dole Food Co. v. Watts*, 303 F.3d 1101, 1111 (9th Cir. 2002)).

Plaintiff argues that Defendants' conduct meets this requirement because: (1) Defendant Hansen was subjectively aware of Plaintiff's location in Idaho when he sent targeted e-mails to Plaintiff's executives; and (2) the list Defendants used to contact Plaintiff's executives showed that more than 100 of those executives resided in Idaho.  *See* Pl.'s Mem. Opp'n, at 9, Docket No. 16 (citing Chandler Aff. ¶¶ 9-11, Docket No 16-2).  In response, Defendants argue that their affidavits demonstrate that they do not have minimum contacts with Idaho.  Defs.' Reply, at 1, Docket No. 18.  This is presumably based on Defendants' statements that they have "never been involved in sending unsolicited e-mail messages that contain advertising for a product or service."  *See* Belova Aff. ¶ 8, Docket No. 17-2; Hansen Aff. ¶ 8, Docket No. 17-3.  As stated above, however, any conflicts between the parties' affidavits are resolved in the plaintiff's favor.  *See Dole*, 303 F.3d at 1108.  The affidavits, allegations in the complaint and representations made at oral argument indicate that Hansen knew he was sending e-mails to individuals who worked at Melaleuca, was familiar with Melaleuca and knew it was located in Idaho.  Based on these statements and allegations, Plaintiff has met its burden of showing that Hansen's conduct resulted in purposeful direction under the *Calder* test.

With regard to Belova, Plaintiff has not met the burden of showing that she purposefully directed any actions toward Idaho.  Plaintiff attempts to satisfy this requirement merely by claiming that because she is married to Hansen, any benefit he received from these e-mails, she received as well through community property.  The Court does not find this argument satisfies the purposeful availment requirement.  Belova's name is not on the e-mails nor is there any indication she works for ITV.  As to Plaintiff's request that it be allowed to conduct discovery as to Belova, it did not set forth what information it intended to uncover that would confer personal

jurisdiction over Belova.  The Court will recommend that the complaint against Belova be dismissed without prejudice at this time, with the understanding that Defendants' counsel would agree to accept service on behalf of Ms. Belova if she is later brought back into the case.  This is based on Plainitf's position that it took considerable time and resources to initially serve her.

### b.      "Arising Out Of" Requirement

In determining whether Plaintiff's claims against Defendants arise out of their Idaho related activities, the Ninth Circuit has applied a "but for" test.  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131-32 (9th Cir. 2003).  Plaintiff has alleged that it was damaged as a direct and proximate result of Defendants' unlawful violation of Can-Spam, and is therefore entitled to damages.  Complaint, ¶ 8, Docket No. 9.  It argues that "but for" Defendants sending e-mails through its servers and to its independent marketing executives, Plaintiff's damages and injuries under Can-Spam would not have arisen.  Pl.'s Mem. Opp'n, at 10, Docket No. 16.   Based on the allegations and affidavits before the Court, the Court finds this requirement has been satisfied.  *See Dole*, 303 F.3d at 1108.

### c.      Reasonableness Requirement

Defendants assert that "Plaintiff has not met its burden of showing that the exercise of jurisdiction by this Court would be fair and reasonable."  Defs.' Reply, at 1, Docket No. 18.  If Plaintiff has met the first two requirements discussed above, however, it is Defendants who have the burden of showing that the Court's jurisdiction over them would not be reasonable.  *See Schwarzenegger*, 374 F.3d at 802.

In the Ninth Circuit, courts examine seven factors to determine whether the exercise of personal jurisdiction is reasonable: (1) the extent of the defendant's purposeful interjection into

**Report and Recommendation - Page 9**

the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the

extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in

adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the

importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the

existence of an alternative forum.  *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082,

1088 (9th Cir. 2000).  Because no factor is dispositive by itself, courts must balance all seven

factors.  *See Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

      In this case, Defendants have not attempted to meet their burden of showing

unreasonableness.  *See* Defs.' Reply, Docket No. 18.  Even if they had, Plaintiff argues that the

Ninth Circuit's reasonableness factors support this Court's exercise of jurisdiction over

Defendants.  Pl.'s Mem. Opp'n, at 11, Docket No. 16.  First, Plaintiff argues that Defendants

purposefully interjected themselves into Idaho's affairs by sending unsolicited e-mails through

an Idaho company to Idaho residents in violation of federal and state laws with the knowledge

that it would cause harm on Idaho property and residents.  *Id*.  Second, it argues that Idaho has a

strong interest in adjudicating the dispute because Plaintiff is an Idaho resident and Idaho has

enacted statutes to govern the claims alleged in this case.  *Id*.  Third, Plaintiff argues that Idaho

would be the most efficient forum because much of the relevant evidence and relevant witnesses

to Plaintiff are located in Idaho.  *Id*.  Finally, although Plaintiff concedes that Idaho may not be

convenient to Defendants, it argues that their inconvenience does not defeat personal

jurisdiction.  *Id*. (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L' Antisemitisme*, 433

F.3d 1199, 1136 (9th Cir. 2006) ("[W]hile the defendant's burden in litigating in the forum is

considered, it will not be deemed unreasonable unless it constitutes a depravation of due

**Report and Recommendation - Page 10**

process")).  The Court agrees with Plaintiff that jurisdiction over Hansen is reasonable under the Ninth Circuit's factors.

## C.      Venue

Defendants argue that venue in this district is improper under 18 U.S.C. § 1391(b) because the claims in Plaintiff's complaint did not arise in Idaho.  Defs' Mot. Dismiss, at 3, Docket No. 14.  Plaintiff counters that Can-Spam specifically provides this district is the proper venue under 15 U.S.C. § 7706(g)(1) because this Court has jurisdiction over Defendants.  Pl.'s Mem. Opp'n, at 13, Docket No. 16.

The Complaint alleges that this Court has subject matter jurisdiction over this case under Can-Spam, rather than from diversity of the parties' citizenship.  *See* Complaint, at 2, Docket No. 9.  Defendants, citing 29 U.S.C. § 1391(b), argue that venue is improper in this district because the alleged acts giving rise to this suit did not occur in this district.  Defs.' Mot. Dismiss, at 3, Docket No. 14.  As stated in full, however, 29 U.S.C. § 1391(b) provides that:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, *except as otherwise provided by law*, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id*. (emphasis added).

It is well settled that a special venue statute, that expressly identifies the proper venue for a particular kind of action, controls over the general venue rule set forth in 29 U.S.C. § 1391(b).  *See* Wright & Miller, 14D Prac. & Proc. Juris. 3d § 3803; *see also Gulf Research & Dev. Co. v.*

*Schlumberger Well Surveying Corp.*, 92 F. Supp. 16, 18 (D. Cal. 1950).  As Plaintiff notes, Can-Spam provides that "[a] provider of Internet access service adversely affected by a [Can-Spam] violation . . . may bring a civil action in *any* district court of the United States *with jurisdiction over the defendants* . . . ."  Pl.'s Mem. Opp'n, at 13, Docket No. 16; *see also* 15 U.S.C. § 7706(g)(1) (emphasis added).  Venue is proper in this district because the Court has found it has personal jurisdiction over Hansen as outlined above.

### D.      Bond

Defendants request that the Court require Plaintiff to post a bond to cover their fees and costs under 15 U.S.C. § 7706(g)(4).  Defs.' Mot. Dismiss, at 4, Docket No. 14.  In an action for Can-Spam violations, "the court *may, in its discretion*, require an undertaking for the payment of the costs of such action, and assess reasonable costs, including reasonable attorney fees, against any party."  15 U.S.C. § 7706(g)(4) (emphasis added).  As Plaintiff notes, only one court has ruled on the issue of whether a court should require a party to post security for costs.  Pl.'s Mem. Opp'n, at 15, Docket No. 16 (citing *Asis Internet Servs. v. Optin Global, Inc.*, 2006 WL 1820902 (N.D. Cal. 2006)).

In *Asis*, the court denied the defendant's request that the plaintiff post security costs because: (1) the defendant was not likely to succeed on the merits; (2) the plaintiff showed evidence in support of its allegations; and (3) requiring the plaintiff to post a bond could chill private-enforcement of Can-Spam as a new area of law.  *Asis Internet Servs. v. Optin Global, Inc.*, 2006 WL 1820902, *8 (N.D. Cal. 2006).  The Court finds similarly in this case.  Requiring the Plaintiff to post a bond could chill private enforcement of Can-Spam and additionally, Plaintiff has submitted affidavits in support of its allegations.

**Report and Recommendation - Page 12**

## **<u>RECOMMENDATION</u>**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY RECOMMENDED that:**

1)      Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 14), filed November 13, 2007, be **GRANTED IN PART AND DENIED IN PART;**

2)      Defendant Svetlana Belova be dismissed without prejudice;

3)      The request to change venue be **DENIED**; and

4)      The request to require Plaintiff to post a bond be **DENIED.**

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.



DATED: May 28, 2008

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**Report and Recommendation - Page 13**