James D. Ruchti - Idaho State Bar #6366
COOPER & LARSEN, CHARTERED
151 North Third Avenue, Suite 210
P.O. Box 4229
Pocatello, ID 83205-4229
Telephone:     (208) 235-1145
Facsimile:     (208) 235-1182

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MELALEUCA, INC.,                    ) | CASE NO. CV-07-212-E-EJL |
|                                     ) | |
| Plaintiff,          ) | |
|                                     ) | |
| vs.                                 ) | **OBJECTION TO REPORT AND** |
|                                     ) | **RECOMMENDATION** |
| DARYL HANSEN and SVETLANA           ) | |
| BELOVA, individually and as a marital ) | |
| community,                          ) | |
|                                     ) | |
| Defendants.         ) | |

COME NOW Defendants and hereby file their objections to the Report and Recommendation

issued on May 28, 2008.[1]  Defendants object to the following determinations from the Report and

Recommendation: (1) the Court has specific jurisdiction over Defendant Hansen; and (2) Plaintiff

is not required to post a bond to cover its fees and costs.

In opposing the specific jurisdiction determination from the Report and Recommendation,

Defendants argue the following: (1) Plaintiff did not carry its burden of satisfying the purposeful

availment requirement because it failed the three-part *Calder* test; (2) Plaintiff did not carry its

_____

[1]It should be noted the Report and Recommendation found that Defendant Svetland
Belova should be dismissed without prejudice.  With this finding, Defendants do not object.

**OBJECTION TO REPORT AND RECOMMENDATION - PAGE 1**

burden of satisfying the "arising out of" requirement because it failed the Ninth Circuit's "but for" test; and (3) the exercise of jurisdiction by this Court would be unreasonable based on the Ninth Circuit's seven factor test.  These arguments will be further explained below.  Defendants argument against the determination that Plaintiff did not need to post a bond will also be provided below.

## ARGUMENT

**I.      The Court Does Not Have Specific Jurisdiction Over Defendants.**

Plaintiff bears the burden of demonstrating that jurisdiction exists.  *Data Disc, Inc. v. Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  Where the motion is based on written materials rather than an evidentiary hearing, "a plaintiff need only make a prima facie showing of jurisdictional facts."  *Id*.  Plaintiff cannot, however, "simply rest on the bare allegations of its complaint."  *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).  When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."  *Id.*

The Report and Recommendation found that jurisdiction existed under a specific jurisdiction analysis.  Whether a forum state may assert specific jurisdiction depends on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action.  *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) (citing *Data Disc, Inc. v. Systems Technology Associates., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977)).

A Court may exercise "specific jurisdiction" when the following requirements are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;  (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; **and**

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake*, 817 F.2d at 1421 (emphasis added).  Each of these three elements is discussed below:

### A.   Plaintiff did not carry its burden of satisfying the purposeful availment requirement because it failed the three-part *Calder* test.

The purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the "effects" test.  Under the "effects" test, the defendant must have done the following: "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

Although intentional acts are alleged, Melaleuca's Second Amended Verified Complaint is void of any specific allegation that Defendants expressly aimed those acts at Idaho or that Defendants acted in a manner which they knew was likely to cause harm in Idaho.  Melaleuca alleges it suffered harm from the tortious conduct, but that allegation alone is insufficient under the effects test to establish the purposeful availment necessary to satisfy due process standards.  The required due process analysis concentrates on the relationship between the Defendants, Idaho and the litigation.  Melaleuca has failed to sustain its burden of proving the necessary relationship between the three to justify this Court in exercising jurisdiction over Defendants.

There is no evidence in the record that Defendants expressly "aimed" the e-mails at Idaho.  Defendant Hansen was simply sending out e-mails to individuals who might be interested in a new business venture.  He was not targeting a particular company or a particular State.

Furthermore, Melaleuca is an international corporation selling its products in numerous countries and throughout the United States.  "A corporation does not suffer harm in a particular

geographic location in the same sense that an individual does." *Core-Vent v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir. 1993). Melaleuca fails to establish that the brunt of any harm it allegedly suffered in this case occurred in Idaho. Melaleuca has not alleged that it does most of its business in Idaho, nor that the brunt of any alleged harm was suffered in Idaho. In fact, Melaleuca has not even attempted to designate an amount of money representing its damages for the allegations contained in its Second Amended Verified Complaint. Neither has Melaleuca identified any of its IME's who have violated their contracts with Melaleuca as a result of Defendants' actions.

Case law makes clear that where the alleged act, as in this case, involves sending a few e-mails that end up in a non-forum state, the CAN-SPAM Act is not intended to grant the non-forum state jurisdiction. In *Bittney Fenn v. Mleads Enterprises, Inc.*, 137 P.3d 706 (Utah 2006), the Utah Supreme Court addressed a case similar to the one at hand and determined it would be inappropriate to subject the non-forum defendants to personal jurisdiction in Utah. In *Fenn*, the Utah resident Plaintiff received an unsolicited e-mail advertisement from Defendant Mleads which she opened while living in Utah. *Fenn*, 137 P.3d at 709. She then litigated her case under the CAN-SPAM Act. *Id.*

The Utah Supreme Court found that in cases dealing with the internet (sending unsolicited e-mails, for example), its focus should be on the nature and quality of the alleged activity. *Id.*, 137 P.3d at 712-13. In using this approach, the Court acknowledged that other jurisdictions used a "sliding scale" approach. *Id.*, 137 P.3d at 713. Under the sliding scale approach, companies that clearly do business over the internet are subject to jurisdiction. *Id.* This includes companies which send and receive files over the internet in furtherance of their business interests. *Id.* At the opposite end of the scale are companies who merely have a website which is available for others to browse. *Id.* Courts generally determine these websites to be passive and that jurisdiction in such situations

is improper. *Id.* In the middle are interactive web sites where a user can exchange information with the host computer. *Id.* In such cases, courts determine the appropriateness of jurisdiction by examining the level of interactivity and the commercial nature of the exchange of information which occurs on the web site. *Id.* In short, the middle ground requires the court to focus on the nature and quality of the activity and the level of exchange which occurs over the internet. *Id.* According to the Utah Supreme Court, implicit in the analysis "is the sender's purpose in sending the e-mail and its effect on the recipient." *Id.*

In applying this analysis to the *Fenn* case, the Utah Supreme Court found "the record is devoid of any evidence illustrating a *substantial* connection between Mleads and Utah arising out of this one e-mail." *Id.*, 137 P.3d at 714. Mleads's marketing agency only knew the e-mail address, but not the geographic location to which the e-mail would be sent or at which it would be opened, which the Court determined made it difficult to base jurisdiction on purposeful availment. *Id.* The same problem is found in the case at hand since Defendant Hansen was using e-mail addresses to make contact.

The Court then determined the e-mail contact at issue in the *Fenn* case was in the middle ground analysis, thus requiring an examination of the nature and quality of the activity and the level of exchange it established. *Id.* The Court determined the e-mail did not involve an actual business transaction because it did not provide, for example, a contract. *Id.* Instead, it provided information and only an intent to solicit a business relationship. *Id.* It did not reflect an actual relationship, however. *Id.* The Court then rejected personal jurisdiction. *Id.*

This final analysis is very similar to the case at hand. Defendant Hansen only offered information in his e-mails. There were no documents attached and no business was transacted. Instead, there was an offer to transact business. Under the *Fenn* analysis, this is simply not enough.

Furthermore, in the case at hand, the intent of Defendant Hansen was to offer to have further discussions about a business relationship. There were no business transactions actually taking place. Finally, the effect of the e-mails from Defendant Hansen has not been demonstrated. For example, Melaleuca has not identified anybody who actually violated his or her contract.

Jurisdiction should be reserved for more serious cases and effects which are more negative in nature. In *Internet Doorway v. Parks*, 138 F.Supp.2d 773, 774 (S.D. Miss. 2001), the Court found jurisdiction to be proper where the Defendant advertised a pornographic website by altering e-mails so it appeared to have been delivered from an e-mail address held by the Plaintiff corporation. The Plaintiff corporation suffered damages within the community from loss of good will and had to expend time and money in responding to complaints from the community. *Id.*

In *Mary CLE, LLC v. First Choice Internet*, 890 A.2d 818, 826 (Md. App. 2006), the Court found jurisdiction to be proper. The Plaintiff tried to get the Defendant to discontinue sending spam e-mails, but Defendant continued to send the unsolicited e-mails an additional 59 times in a one month period. *Id.*

In these types of cases, it is appropriate for non-forum defendants to be hailed into the forum court to defend their actions. In the case at hand, the actions are not negative enough to justify hailing Defendants into Court in Idaho.

**B.** **Plaintiff did not carry its burden of satisfying the "arising out of" requirement because it failed the Ninth Circuit's "but for" test.**

To determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction, the Ninth Circuit relies on the "but for" test. *See Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *reversed on other grounds* 499 U.S. 585, 111 S.Ct. 1522 (1991). The question under this test as applied to this case is: But for Defendants' contacts with Idaho, would Melaleuca's claims against Defendants have arisen? *Id.*

The answer is "yes." Melaleuca's claims would have arisen without Defendants' alleged forum contacts because the bases for Melaleuca's causes of action are that Defendants sent out multiple e-mails to its IME's – in some cases using the Melaleuca server – and, in doing so, violated the CAN-SPAM Act, violated the Idaho Consumer Protection Act, violated the Idaho Trade Secrets Act, and tortiously interfered with Melaleuca's contracts with its IME's. Some of the alleged recipients of the e-mails were in Idaho and Melaleuca is headquartered in Idaho. However, the causes of action do not hinge on some of the IME's being from Idaho or on the fact that the company was headquartered in Idaho. Furthermore, there is no proof that the server was located in Idaho.

"The 'but for' test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum." *Shute*, 897 F.2d at 385. Melaleuca fails to present facts which establish the required nexus. That connection is simply not there.

**C.    The exercise of jurisdiction by this Court would be unreasonable based on the Ninth Circuit's seven factor test.**

Once it has been decided that a defendant purposefully established minimum contacts with a forum, "he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" in order to defeat personal jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). In determining whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," the Court is required to consider seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent*, 11 F.3d at 1488. None of these factors is dispositive, so the Court must balance them.

*Roth v. Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

The burden shifts to Defendants to establish a "compelling case" that the Court's exercise of personal jurisdiction is unreasonable *only if* Plaintiff has sustained its burden of proving that the Defendants' activities were purposefully directed at Idaho and the claims arise out of the Defendants' contacts with Idaho. *Jane Doe v. American National Red Cross*, 112 F.3d 1048, 1052 (9th Cir. 1997), citing *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1198 (9th Cir. 1988). As discussed above, Melaleuca cannot sustain its burden of proving either purposeful availment or that the claims alleged against Defendants arose out of activities occurring in Idaho. Unless Melaleuca sustains its burden of proof in this regard, the Court need not consider the third prong of the test for specific jurisdiction.

In the event the Court does determine that Defendants purposefully established minimum contacts with Idaho, Defendants assert that under the balancing of the seven factors in the third prong, specific jurisdiction does not exist. Under the first factor, Defendants' purposeful interjection into Idaho, if it existed at all, was limited in nature. It consisted of sending some e-mails which arrived in virtual "in-boxes" in the e-mail accounts for a handful of Idaho residents. This is such a minimal intrusion that it simply lacks the seriousness necessary to haul a non-forum resident into Idaho's courts.

Melaleuca has painted Defendant Hansen as a "professional spammer." Nothing could be further from the truth. Defendant Hansen is a businessman – an entrepreneur. He and the company for which he works (ITV) and Melaleuca are all part of the multi-level marketing industry. Multi-level marketing companies rely on IME's to market their products. IME's are notorious for switching companies again and again and again.[2] By sending out e-mails to IME's in the multi-level

---

[2]In fact, the Court should note that in the industry, there is a sub-industry where individuals sell lists of IME's from different multi-level marketing companies. A simple "Google" search will reveal these kinds of marketing leads.

marketing industry (some of which were with Melaleuca), Defendant Hansen was merely testing the waters to see if some of them wanted to try a different business opportunity (he was not selling products).

This is how the free market works. Melaleuca is essentially arguing that its IME's cannot be approached with such offers. It makes no sense for the Court to allow Defendant Hansen's invitation to become the basis for the causes of action Melaleuca has alleged and makes even less sense for the Court to base jurisdiction on such an offer. It seems disingenuous for Melaleuca to thrive on the merits of the free market and then to complain when that same system may have a potential negative impact on its organization. Businesses in the free market "live by the sword and die by the sword." Melaleuca's claim of protection for its IME's is even more suspect given the fact that IME's are supposed to be independent agents, not employees. Melaleuca does not have the right to control its independent agents' in the same way it has the right to control its employees. In any case, the Court should consider these contexts in determining whether Defendant Hansen's actions were significant enough to justify hailing him into Court in Idaho.

Under the second factor, the burden on the Defendants of defending this lawsuit in Idaho is heavy. This lawsuit promises to exact significant time and resources from Defendant Hansen in running his business and supporting his family if the lawsuit is litigated under Idaho jurisdiction. Instead of being able to attend trial, hearings and depositions in California, Defendant Hansen will be required to attend these events in Idaho at significant expense to himself and his business. All because he sent out some e-mails asking people to look at a new business opportunity.

The fourth factor, the forum state's interest in adjudicating the dispute, does not appear to affect the analysis. Melaleuca is an international company, doing significant business throughout the United States and all over the world. In addition, these claims do not involve complex questions

of law or issues whose resolution requires an interpretation of law unique to Idaho courts.

Finally, under the seventh factor, there is an alternative forum available in California to try this case. The remaining factors do not appear to play a significant role in the seven factor test analysis.

It should be noted that the Utah Supreme Court in the *Fenn* case also found jurisdiction to be improper under the reasonableness inquiry. *Fenn*, 137 P.3d at 715. The Court found the burden on business would be too heavy, was unreasonable, and "violative of the traditional notions of fair play and substantial justice sustained by the federal *due process clause*." *Id.*

## II.    The Court Should Require Plaintiff to Post a Bond.

Given the analysis above, the Court should take another look at the question of whether a bond should be posted in this case by Melaleuca to cover Defendants costs and fees pursuant to 15 U.S.C. § 7706(g)(1). Not only are Defendants likely to succeed on the merits of this case, but – more importantly – requiring Melaleuca to post a bond would not chill the private-enforcement of legitimate CAN-SPAM cases. The Court's concern regarding the "chilling effect" must be about ensuring legitimate victims of spam are not discouraged from using the CAN-SPAM Act to seek justice. The Court should also be aware that the CAN-SPAM Act might be used by companies to discourage competition against it in the free market. This is not the purpose of the CAN-SPAM Act and requiring a bond to be posted in a case like this will discourage companies from misusing the Act.

## CONCLUSION

Based on the analysis above, the Court should dismiss the above-captioned case for lack of personal jurisdiction.

DATED this 16th day of June, 2008.

COOPER & LARSEN

/s/ James D. Ruchti
JAMES D. RUCHTI

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of June, 2008, I served a true and correct copy of the foregoing to:

| | | |
|---|---|---|
| Bradlee R. Frazer | [  ] | U.S. mail |
| D. John Ashby | [ x ] | ECF Notification |
| Loren K. Messerly | [  ] | Hand delivery |
| Hawley Troxell Ennis & Hawley | [  ] | Fax |
| P.O. Box 1617 | | |
| Boise, ID 83701-1617 | | |


   /s/ James D. Ruchti                    
JAMES D. RUCHTI