Bradlee R. Frazer, ISB No. 3857
D. John Ashby, ISB No. 7228
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone:  (208) 344-6000
Facsimile:  (208) 342-3829
E-mail:bfra@hteh.com
       jash@hteh.com

Attorneys for Plaintiff Melaleuca, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MELALEUCA, INC., <br><br>        Plaintiff, <br>vs. <br><br>DARYL HANSEN and SVETLANA BELOVA, individually and as a marital community, <br><br>        Defendants. | Case No. CV 07-212-E-EJL <br><br>PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION |

Plaintiff Melaleuca, Inc. ("Melaleuca"), by and through its counsel of record, Hawley Troxell Ennis & Hawley LLP, and pursuant to F.R.C.P. 72(b)(2), submits this Response to Defendant Daryl Hansen's Objection to Report and Recommendation.

## I.
## INTRODUCTION

Defendant Hansen's actions in spamming hundreds of Melaleuca Marketing Executives, including over 100 Idaho residents, is in clear violation of the CAN-SPAM Act. Like most

PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO REPORT
AND RECOMMENDATION - 1

spammers, Hansen sent large volumes of unsolicited commercial e-mail, knowing that it would be received throughout the country. By doing so, Hansen subjected himself to personal jurisdiction in many states, including Idaho. Moreover, jurisdiction is particularly appropriate in Idaho given that Hansen was specifically targeting a well-known Idaho corporation with many Marketing Executives in Idaho. Having engaged in unlawful actions, and having directed his unlawful spam e-mails to Idaho, Hansen is subject to personal jurisdiction in this judicial district.

Hansen's objections notwithstanding, the Report and Recommendation correctly concludes that jurisdiction in Idaho is appropriate. The Report and Recommendation should be adopted.

## II.
## ARGUMENT

### A.  Arguments Raised For The First Time In Hansen's Objection To Report And Recommendation Are Waived.

Up until a few days before the hearing on his Motion to Dismiss, Defendant Hansen chose to represent himself without the assistance of counsel. Hansen's briefing in connection with the Motion to Dismiss contained very little legal analysis or argument. Even after Melaleuca responded to the Motion to Dismiss and set out the standard for determining whether the Court has jurisdiction in a case involving e-mails in violation of the CAN-SPAM Act, Hansen still did not address the appropriate legal standard. Instead, Hansen focused his briefing on the argument that he is not a spammer, which not only is irrelevant for jurisdictional purposes, but flies in the face of the evidence.

Hansen's Objection to the Magistrate's Report and Recommendation consists mostly of arguments now raised for the first time. For example, the Report and Recommendation correctly points out that once a plaintiff establishes the first two prongs of the specific jurisdiction test, the

burden falls upon a defendant to establish that jurisdiction over the defendant would not be reasonable.  However, as explained by the Report and Recommendation, the "Defendants have not attempted to meet their burden of showing unreasonableness." *See* Report and Recommendation, p. 10.

Hansen cannot now raise arguments that were not presented to the Magistrate Court.  *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *see also Secretary of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) (holding that arguments raised for the first time in objection to a report and recommendation are waived because the Magistrates Act was not intended "to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court"), overruled on other grounds by *United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992).

New arguments raised in Hansen's Objection to Report and Recommendation are waived. They should not now be considered by the Court.

**B.     Defendant Hansen is Subject to Personal Jurisdiction in this Court**

While many of the arguments raised now by Hansen are waived because they were not asserted in his briefing to the Magistrate Court, the waived arguments, even if considered, do not save Hansen from the personal jurisdiction of this Court.  As explained in the Report and Recommendation, the Ninth Circuit has established a three-factor test for determining when a state may constitutionally exercise specific jurisdiction over a defendant: "(1) the nonresident defendant must do some act or consummate some transaction with the forum state or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of its laws; (2) the claim must arise out

of or result from the defendant's forum-related activity; and/or (3) the exercise of jurisdiction must be reasonable." *See* Report and Recommendation, p. 6 (quoting *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1188-89 (9th Cir. 2002)).  The plaintiff bears the burden of satisfying the first two requirements.  *See Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004).  If the plaintiff satisfies the first two requirements, the burden shifts to the defendant to show that the Court's exercise of jurisdiction would not be reasonable.  *Id.*

### 1. Hansen Satisfies The Purposeful Availment Or Purposeful Direction Test

As explained in the Report and Recommendation, the purposeful availment test is satisfied if the defendant's actions outside the forum state are directed at the forum.  *See Schwarzenegger,* 374 F.3d at 802.  Hansen now argues (for the first time) that this test is not satisfied because Hansen did not direct his spam e-mail at Idaho.  This argument both misrepresents the facts of the case and misunderstands the law of purposeful direction as applied to spammers.

Hansen asserts the following in his Objection to the Report and Recommendation:

> There is no evidence in the record that Defendants expressly "aimed" the e-mails at Idaho.  Defendant Hansen was simply sending out e-mails to individuals who might be interested in a new business venture.  <u>He was not targeting a particular company or a particular state</u>.

*See* Objection to Report and Recommendation, p. 3 (emphasis added).

Hansen's assertion that he was "not targeting a particular company or a particular state" is false and misleading.  Hansen was not just sending spam to random e-mail addresses.  Instead, Hansen was sending spam to e-mail addresses he obtained from a list of Melaleuca Marketing Executives.  *See* Chandler Aff., ¶ 7-9.  That list contained names, e-mail addresses, website addresses, and in some cases phone numbers and/or physical addresses of Melaleuca Marketing

PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO REPORT
AND RECOMMENDATION - 4

Executives.  *Id.* at 8.  Hansen sent spam on no fewer than three occasions to no fewer than 1,400 iglide.net e-mail addresses.  *Id.* at 9.  (Internet and e-mail services are provided by Melaleuca to its Marketing Executives through the iglide.net domain name.  *See* Nye Aff., ¶ 2.).  More than 100 of the individuals to whom Hansen sent spam are residents of Idaho.  *Id.* at ¶ 9.

Contrary to Hansen's assertions, his spam e-mails specifically targeted Melaleuca Marketing Executives.  In fact, many of his e-mails lead with "Hello [name].  I saw that you are with Melaleuca."  *See* Chandler Aff., Ex. A.  The spam e-mails further assert that "I have several friends in Melaleuca."  *Id.*  Thus, because of his familiarity with the company, Hansen certainly knows that Melaleuca is headquartered in Idaho and that many of its Marketing Executives would receive his spam in Idaho.

Even if Hansen did not know that over 100 of his spam e-mails would go to Idaho residents, the facts of this case would still satisfy the purposeful direction test.  With the proliferation of spammers sending e-mails throughout the country, the courts have had multiple opportunities to find that spammers are subject to personal jurisdiction in whatever states their spam has been received.  Indeed, the very nature of spamming is that spammers indiscriminately send their unsolicited bulk e-mails throughout the country, with the unsolicited e-mails harming servers where e-mail accounts are physically located and also harming the various e-mail recipients who may be residents of many different states.  This is precisely the harm the CAN-SPAM Act seeks to prevent.

Hansen is not the first spammer to argue that a forum in which his unsolicited missives were received lacks jurisdiction because the spammer did not know exactly where the spam was being sent.  This same argument has been rejected by several courts.  For example, in *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818 (Md. App. 2006), the court held that a spammer

PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO REPORT
AND RECOMMENDATION - 5

who sent e-mails throughout the country satisfies the purposeful availment test in any forum in which the spam is received. The court explained that a spamming defendant "cannot plead lack of purposeful availment because the 'nature' of the Internet does not allow it to know the geographic location of its e-mail recipients." *Id.* at 834. The court concluded:

> Although [defendant] did not deliberately select Maryland or any other state in particular as its target, it knew that the solicitation would go to Maryland residents. Its broad solicitation of business instantiates the purpose that makes the connection more than an attenuated nexus, and thus it should be subject to jurisdiction wherever its e-mail[s] were received.

*Id.* at 835; *see also See Internet Doorway, Inc. v. Parks,* 138 F.Supp. 2d 773, 779-800 (S.D. Miss. 2001) ("By sending an e-mail solicitation to the far reaches of the earth for pecuniary gain, one does so at her own peril, and cannot then claim that it is not reasonably foreseeable that she will be haled into court in a distant jurisdiction to answer for the ramifications of that solicitation.").

Hansen's reliance on *Fenn v. Mleads Enterprises, Inc.*, 137 P.3d 706, (Utah 2006), is misplaced. There, the Utah court refused to find jurisdiction based on the sending of <u>one single e-mail</u> received in Utah. The court made clear that its conclusion was limited to the facts of the case and that only one single e-mail was involved. In fact, the court specifically noted that its conclusion might be different if there was evidence that the defendant was "sending mass e-mails into Utah." *Id.* at 713. Unlike *Fenn*, where one single e-mail was involved, this case involves at least 1,400 e-mails sent to e-mail addresses with Melaleuca's iglide.net domain name and at least 100 e-mails received by Idaho residents.

Moreover, the court in *Fenn* focused on the fact that the defendant had no idea where the one single e-mail would be received and thus had no way of knowing that its e-mail might injure someone in Utah. *Id.* at 714. The *Fenn* case has no application to the case at hand. Unlike the

PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO REPORT
AND RECOMMENDATION - 6

defendant in *Fenn*, Hansen was specifically targeting the Marketing Executives of a corporation that Hansen knew was headquartered in Idaho, using an e-mail domain (iglide.net) he knew belonged to an Idaho corporation. It would come as no surprise to Hansen that at least 100 of his e-mails would be received by Idaho residents and that at least 1,400 e-mails would pass through an Idaho corporation's servers.

### 2. Melaleuca's Causes of Action Arise Out Of The Forum Contacts

Hansen next asserts erroneously that Melaleuca's causes of action do not arise out of Hansen's contacts with Idaho. Hansen has sent spam e-mails to hundreds of Melaleuca Marketing Executives, at least 1,400 of which passed through Melaleuca's servers and at least 100 of which were received in Idaho. Melaleuca's cause of action under the CAN-SPAM Act arises out of these actions. Thus, the "arising out of" requirement is easily satisfied. *See MaryCLE*, 890 A.2d at 832 ("Here, the 'connection to [Maryland] is the claim itself – the transmission of [e-mail] to Maryland residents.' . . . In other words, '[b]ut for [the defendant's] alleged transmission of this spam," MaryCLE and NEIT 'would not have suffered an injury.'").

### 3. Jurisdiction in Idaho Is Reasonable

Hansen now asserts for the first time that jurisdiction in Idaho is not reasonable. As explained above, Hansen has waived this argument because he did not even attempt to meet his burden of showing unreasonableness in his briefing to the Magistrate. *See* Report and Recommendation, p. 10. In any event, for the reasons set forth in the Report and Recommendation, an application of the relevant factors leads to the conclusion that jurisdiction in Idaho is reasonable.

Hansen essentially argues that jurisdiction in Idaho is not reasonable because his spamming constitutes only a "minimal intrusion" and "simply lacks the seriousness necessary to

PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO REPORT
AND RECOMMENDATION - 7

haul a non-forum resident into Idaho's courts." *See* Objection to Report and Recommendation, p. 8. With all due respect, Hansen's perception of the seriousness of his illegal actions is irrelevant. Congress enacted the CAN-SPAM Act to stop spammers like Hansen. Hansen's disregard of the law and indiscriminate sending of spam into Idaho makes jurisdiction in Idaho reasonable.

**C.     No Bond Should Be Required**

The CAN-SPAM Act provides that "the court <u>may, in its discretion</u>, require an undertaking for the payment of the costs of such action and assess reasonable costs, including reasonable attorney fees, against any party." *See* 15 U.S.C. § 7706(g)(4) (emphasis added). As explained by the Report and Recommendation, only one court has ruled on the issue of whether a court should require a party to post security for costs, and that court denied the request for a bond because: (1) the defendant was not likely to succeed on the merits; (2) the plaintiff showed evidence in support of its allegations; and (3) requiring the plaintiff to post a bond could chill private enforcement of CAN-SPAM as a new area of law. The Report and Recommendation correctly concludes that no bond should be ordered in this case for the same reasons.

**D.     Hansen's Response was Not Timely Filed**

Finally, Hansen's Objection to Report and Recommendation should be rejected as untimely. The Report and Recommendation was issued on May 28, 2008, and specifically provides that "[w]ritten objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1." This same ten-day requirement is mandated by Federal Rule of Civil Procedure 72(b)(2). Hansen did not file his Objection, however, until June 16, 2008, making it untimely.

## III.
## CONCLUSION

For the foregoing reasons, the Report and Recommendation should be adopted.

DATED THIS ___26th___ day of June, 2008.

                      HAWLEY TROXELL ENNIS & HAWLEY LLP


                      By_____/s/_____
                         Bradlee R. Frazer, ISB No. 3857
                         Attorneys for Plaintiff Melaleuca, Inc.

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this _26th__ day of ____June_____, 2008, I electronically filed the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

    **Attorneys for Defendants, Daryl Hansen and Svetlana Belova:**
        James D. Ruchti
        COOPER & LARSEN, CHARTERED

                                    /s/
                               Bradlee R. Frazer