UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MELALEUCA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 07-212-E-EJL-MHW |
| | ) | |
| v. | ) | |
| | ) | ORDER ADOPTING REPORT AND |
| DARYL HANSEN, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

On June 29, 2010, United States Magistrate Mikel H. Williams issued his Report and Recommendation in this matter. Docket No. 69. Pursuant to 28 U.S.C. § 636(b)(1), the parties had fourteen days in which to file written objections to the Report and Recommendation. Plaintiff Melaleuca, Inc. ("Melaleuca") filed its objection on July 16, 2010. Docket No. 70. Defendant Daryl Hansen ("Hansen") filed his response to the objection on July 28, 2010. Docket No. 71. The matter is now ripe for the Court's review.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Moreover, this Court "shall make a de novo determination of those portions of the report

which objection is made." *Id.* In *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003), the court interpreted the requirements of 28 U.S.C. 636(b)(1)(C):

> The statute [28 U.S.C. § 636(b)(1)(C)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise. As the *Peretz* Court instructed, "to the extent de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." *Peretz*, 501 U.S. at 939 (internal citation omitted). Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct. *See Ciapponi*, 77 F.3d at 1251 ("Absent an objection or request for review by the defendant, the district court was not required to engage in any more formal review of the plea proceeding."); *see also Peretz*, 501 U.S. at 937-39 (clarifying that de novo review not required for Article III purposes unless requested by the parties) . . . .

*See also Wang v. Masaitis*, 416 F.3d 993, 1000 & n.13 (9th Cir. 2005). Based on the objections filed in this case, the Court has conducted a de novo review of the record pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND

The Court adopts the factual summary set forth by Judge Williams in the Report and Recommendation, pp. 2-3:

> Defendant Hansen resides in California and at the time of these alleged events, worked as an independent marketing executive for a multi-level marketing company called ITV. In connection with the work he performed for ITV, Hansen would attempt to get ITV customers to join ITV, performing the same type of work. Melaleuca, an Idaho corporation, is engaged in a similar type of business model. Melaleuca encourages its customers to become marketing executives by referring family and friends to Melaleuca to purchase its products and allowing them to earn commission on any orders made by the referred individuals.
> Additionally, Melaleuca is the owner of the domain name iglide.net. Through iglide.net, Melaleuca gives their marketing executives the option of purchasing Internet services, including e-mail. Melaleuca provides e-mail accounts through the iglide.net domain name and provides Internet access

through a third-party Internet Service Provider ("ISP"), IP Applications. (Nye Aff., Docket No. 43-3, ¶¶ 4-5.)

After Hansen began working at ITV, he contacted individuals via e-mail, some of whom worked at Melaleuca, and inquired whether they would be interested in hearing about a new business opportunity. The e-mails gave a brief description of how ITV works, exulted the benefits of working for ITV and asked the individuals to call him. It has been represented at an earlier hearing that Hansen was aware that several of these individuals worked at Melaleuca. Some of the Melaleuca marketing executives he contacted were users of the iglide.net e-mail service.

Melaleuca has brought four causes of action against Hansen, including violation of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM" Act), 15 U.S.C. § 7701, *et seq.*, violation of the Idaho Consumer Protection Act ("ICPA"), misappropriation of trade secrets and tortious interference with contract.

In the Report and Recommendation, Judge Williams recommends Defendant's motion to dismiss be granted and the state law claims dismissed without prejudice. Judge Williams determined pursuant to Ninth Cirucit law Melaleuca did not have standing to bring the CAN-SPAM claim as it is not an internet service provider and did not establish it had been adversely affected by Hansen's alleged actions. Melaleuca objects to both these findings.

## PROCEDURAL ISSUES

### 1. Opportunity for Further Briefing

Melaleuca complains in its objection that it was unreasonable for Judge Williams to have relied on a Ninth Circuit case decided after the briefing was finalized on the motion to dimisss, *Gordon v. Virtumundo, Inc.,* 575 F.3d 1040 (9th Cir. 2009), without giving the parties the opportunity to file additional briefing. The Court respectfully disagrees that Judge Williams was required to allow additional briefing. At the time

Melaleuca informed the Court that settlement negotiations had failed in April 2010, the decision in Gordon had been out for eight months.  Melaleuca's counsel specifically indicated in its status report of April 9, 2010 that Judge Williams should decide the pending motion without oral argument and did not ask for leave to file supplemental briefs.  Docket No. 65.  Moreover, courts regularly review and take into account new case law that comes to the court's attention in researching pending motions.  Finally, Plaintiff had the opportunity to argue the implications of the Gordon case in its objection, so it has not been prejudiced in any manner and this procedural objection is denied.

**2.  Standard of Review**

Next, Plaintiff argues that the motion to dismiss should be converted to a motion for summary judgment as facts outside the Complaint have been relied upon by the Magistrate Judge.  Plaintiff continues that under the summary judgment standard there are genuine issues of material fact that prevent the CAN-SPAM claim from being dismissed.  The Court finds the Magistrate Judge Williams properly set forth the standard of review when he stated if matters outside the Complaint are considered, the motion is converted to a motion for summary judgment.  Judge Williams then set forth the proper standard of review for a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Clearly, numerous affidavits have been submitted by the parties related to the motion to dismiss.  Accordingly, the motion to dismiss will be analyzed as a motion for summary judgment just as Judge Williams did.

# ANALYSIS OF OBJECTIONS ON THE MERITS

The issue in the motion to dismiss is whether or not Melaleuca has standing to bring an action under CAN-SPAM. "The CAN-SPAM Act became effective on January 1, 2004, and was enacted in response to mounting concerns associated with the rapid growth of spam emails." *Id.* at 1047. "The Act does not ban spam outright, but rather provides a code of conduct to regulate commercial email messaging practices. Stated in general terms, the CAN-SPAM Act prohibits such practices as transmitting messages with 'deceptive subject headings' or 'header information that is materially false or materially misleading.'" *Id.* at 1047-48.

> The CAN-SPAM Act's enforcement provision empowers the Federal Trade Commission, state attorneys general, and other state and federal agencies to pursue legal actions to enforce the Act's provisions 15 U.S.C. § 7706(a), (b), (f). Congress also provided a limited private right of action, which states: A "provider of Internet access service ["IAS"] adversely affected by a violation of" § 7704(a)(1), (b), or (d), or "a pattern or practice that violates" § 7704(a)(2) through (5) of the Act "may bring a civil action in any district court" to enjoin further violation by a defendant or to recover either actual or statutory damages, whichever is greater. 15 U.S.C. § 7706(g)(1).

*Id.*

**1.  Is Melaleuca an Internet Service Provider?**

Melaleuca objects to the magistrate judge's finding that it is not a *bona fide* internet service provider ("ISP") and argues the *Gordon* case should not be so narrowly construed. While the facts of this case are different than those presented in *Gordon*, the legal analysis of *Gordon* still applies to the case at bar. It is undisputed that Melaleuca is

not a traditional internet service provider. Melaleuca is the owner of the domain name iglide.net, however, Melaleuca provides email and internet access through a third party internet service provider, IP Applications. Melaleuca does not own or operate IP Applications. Melaleuca does not have access or control over the hardware that enables internet access to iglide.net customers. Melaleuca does not control the spam filters applied to emails by IP Applications.

In *Gordon*, the Ninth Circuit held that Congress "conferred standing only on a narrow group of possible plaintiffs" and CAN-SPAM "provides for a limited right of action by *bona fide* Internet service providers." *Gordon* at 1049-50. The Court agrees with Judge Williams that under the specific undisputed facts of this case viewed in a light most favorable to Plaintiff, Melaleuca is not a *bona fide* ISP as intended by Congress. Just like the plaintiff in *Gordan* who owned a domain name but leased server space on GoDaddy.com for internet service, Melaleuca owns a domain name but is not the internet service provider.

The Court also rejects Melaleuca's attempt to establish standing after filing its complaint and before filing its response to the motion to dismiss by having IP Applications assign its CAN-SPAM claims to Melaleuca. As indicated by Judge Williams, "[s}tanding is determined at the time an action is commenced." *See Minneapolis & St. L. R.R. Co. V. Peoria & Pekin Union Ry. Co.*, 270 U.S. 580, 586 (1926); *Lugan v. Defenders of Wildlife*, 504 U.S. 555, 569 n. 4 (1992). Report and Recommendation n. 2.

**2. Was Melaleuca Adversely Affected?**

Plaintiff also argues the magistrate judge erred in finding Melaleuca was not adversely affected by the alleged 1400 emails sent by Hansen. Alternatively, even if the Court is incorrect on whether Melaleuca could be considered an ISP, Melaleuca has not created a genuine issue of material fact regarding whether it was "adversely affected."

> [T]he harm must be both real and of the type experienced by ISPs. While the harm need not be significant in the sense that it is grave or serious, the harm must be of significant to a bona fide IAS provider, something beyond the mere annoyance of spam and great thean the negligible burdens typically borne by an IAS provider in the ordinary course of business.

*Gordon* at 1053-54. The Ninth Circuit went on to state that routine business concerns and operating costs are not sufficient to allow an ISP access to CAN-SPAM's significant statutory damage provisions. *Id.* While the Court cannot disagree with Melaleuca's claim that spam "in general" increases the costs it has to pay to its ISP, IP Applications, Melaleuca has not established any direct adverse affect or additional costs incurred due to the alleged limited number of emails sent by Hansen. Melaleuca speculates there may have been some "loss of goodwill" from the six complaints it received, but Melaleuca is unable to satisfy the test of "adverse affect" required by *Gordon*. This Court agrees with Judge Williams that the type of harm alleged by Melaleuca does not create a genuine issue of material fact because even assuming the harm alleged occurred, it does not satisfy the legal test Congress intended for ISP providers being adversely affected. Therefore, the federal CAN-SPAM claims must be dismissed as a matter of law.

### 3. Is Dismissal of the CAN-SPAM Claim With or Without Prejudice?

Melaleuca argues if the Court decides to grant the motion to dismiss, it should dismiss the CAN-SPAM claims without prejudice instead of with prejudice. While Judge Williams did not specifically state whether the recommended dismissal was with or without prejudice, the Court agrees with Plaintiff that a dismissal based on a lack of standing is not an adjudication on the merits and should be without prejudice. *See Fleck and Associates, Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1106-07 (9th Cir. 2006).

### 4. Should the Court Retain Jurisdiction Over Remaining State Law Claims?

Judge Williams recommended declining to exercise supplemental jurisdiction over the state law claims. Plaintiff argues the Court should grant Plaintiff leave to amend to establish diversity over the state law claims. It is undisputed that the parties are diverse, but no allegation of damages related to the state law claims was contained in the Complaint. Based on the Court's finding of no adverse affect on Melaleuca for the alleged federal claims, the Court finds it difficult to imagine how Plaintiff could establish damages of at least $75,000 that were not purely speculative based on the alleged emails sent to its customers. To rely on what effectively is mere speculation and conjecture is contrary to the Ninth Circuit's requirement that the jurisdictional determination be grounded on a factual basis that is similar in quality to "summary-judgement-type evidence." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir.

2003). Simply put, Plaintiff's Complaint, provides no reasoned basis for determining that the amount in controversy exceeds $75,000 after the federal claims with statutory damages are dismissed.

Where, as here, the Court has determined prior to trial that all federal claims shall be dismissed, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). Thus, in accordance with the direction provided by the case law, and consistent with the factors set forth in 28 U.S.C. § 1367(c), the Court declines to exercise its discretion to hear the state law claims and will dismiss the claims without prejudice to the Plaintiffs' right to refile them in state court.

## ORDER

Being fully advised in the premises, the Court hereby orders Defendant Hansen's Motion to Dismiss (Docket No. 38) is GRANTED. Plaintiff's federal CAN-SPAM claims are DISMISSED WITHOUT PREJUDICE. The Court declines to exercise jurisdiction over the remaining state law claims, so such state law claims are DISMISSED WITHOUT PREJUDICE.

DATED: September 30, 2010

*/s/ Edward J. Lodge*
Honorable Edward J. Lodge
U. S. District Judge